UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Danny Montgomery<br>4539 Henry Road<br>Shelby, Ohio 44875 | :<br>:<br>:<br>: | Case No. 1:21-CV-00999 |
| v. | :<br>: | Judge: Dan Aaron Polster |
| Adam Gove, PE, PS<br>Richland County Engineer<br>77 North Mulberry Street<br>Mansfield, Ohio 44903 | :<br>:<br>:<br>:<br>: | **SECOND AMENDED**<br>**COMPLAINT WITH JURY DEMAND**<br>**ENDORSED HEREIN** |
| And | :<br>: | |
| Sedgwick Claims Management Servs, Inc.<br>c/o Corporation Service Company<br>50 West Broad St., Suite 1330<br>Columbus, Ohio 43215 | :<br>:<br>:<br>: | |

1. This is an action for damages for violations of the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act 42 U.S.C.A. §12101 et. seq., Ohio law at ORC §4112 *et seq.,* and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§2611 et seq.

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

**PARTIES**

3. Plaintiff Danny Montgomery is a resident of Richland County, Ohio, and former employee of Defendant Richland County Engineer.

4. Plaintiff was employed by Defendant Engineer from September 29, 2005, until January 4, 2021, most recently as a Highway Maintenance Worker II.

5. Defendant Richland County Engineer (hereinafter "Engineer") is a body politic and corporate and an employer as that term is defined by the ADA, Ohio law, and the FMLA.

6. Defendant Sedgwick Claims Management Services, Inc. (hereinafter, "Sedgwick") is a Tennessee corporation.

7. Defendant Sedgwick is an "employer" as that term is defined by the FMLA because, in this case, Sedgwick is a corporate "person" and an agent who was "working directly or indirectly, in the interest of a covered employer:" Defendant Richland County Engineer.

8. Defendant Engineer delegated to Defendant Sedgwick the power to grant or deny job protected family medical leave to Plaintiff and other employees of Defendant Richland County Engineer.

9. Exhibit A, attached hereto, is a letter from Sedgwick to Plaintiff acknowledging his request for family medical leave and:

    a. Requiring him to return a Health Care Provider Certification by September 14, 2020 and advising him that failure to do so may result in a denial of his benefits.

    b. Requiring him to provide a release to return to work form to Sedgewick two days before the end of his absence and advising him that failure to do so may delay his return to work.

10. Exhibit B, attached hereto, is a letter from Sedgwick to Plaintiff approving his request for *job protection* under the family medical leave and advising him that his leave time will be deducted from his FMLA entitlement; and:

    a. Requiring him to report all absences associated with the approved leave to Sedgwick and his supervisor.

**BACKGROUND FACTS:**

11. Plaintiff is disabled as that term is defined by the Americans with Disabilities Act (ADA) as he suffers with mental health disabilities.

12. At all times relevant herein, Defendants were aware of Plaintiff's disability.

13. Because of Plaintiff's mental health disabilities, he has been receiving counseling and treatment since 2019.

14. Plaintiff voluntarily sought help for his disabilities following an incident at work and informed Defendant Engineer that he was undergoing counseling.

15. Beginning on August 10, 2020, Plaintiff suffered a "flare-up" of his symptoms.

16. From August 10, 2020, until October 29, 2020, Plaintiff was on an approved family medical leave because he was suffering with symptoms of his disability and was receiving treatment and counseling.

17. Part of the treatment he was receiving was a new medication regime.

18. Because he was suffering extreme symptoms of his disabilities and taking new medication, Plaintiff was unable to perform the functions of his job and was completely incapacitated during his leave.

19. Plaintiff's symptoms included the inability to think rationally and to process information fully and accurately.

20. He was suffering with a lack of sleep, mood swings, stress, and anxiety.

21. On September 23, 2020, Plaintiff received a telephone call from Sedgwick Representative Andrew Cox who was calling regarding Plaintiff's ongoing need for leave of absence.

22. Plaintiff does not clearly remember the phone call, but it was recorded by Cox, who advised Plaintiff he was recording.

23. During the phone call, Plaintiff told Cox about his extreme symptoms, his diagnoses and treatment, including the fact that he was currently undergoing counseling and taking medications to help deal with his issues.

24. Plaintiff mentioned that he had violent thoughts of harming others, including unnamed co-workers.

25. Plaintiff recounted his belief that one of his co-workers had been driving by his house as if to stalk him.

26. Plaintiff talked about having suicidal thoughts.

27. He recounted the harassment he had been suffering at the hands of some of his coworkers.

28. Plaintiff repeatedly stated that he loved his job, that he was a good worker, and wanted to return to work.

29. Plaintiff was rambling and was in the throes of a mental health crisis when he had this conversation.

30. Defendant Sedgwick advised Defendant Engineer about the telephone call on September 23, 2020 and provided Defendant Engineer with a copy of the recording.

31. After the phone call, Plaintiff remained on leave for another month and continued receiving treatment.

32. Plaintiff was released to return to work on October 29, 2020, with a return-to-work date of November 1, 2020.

33. Plaintiff fully expected to return to work and perform his duties without restriction.

34. Plaintiff also expected to continue receiving treatment upon his return to work, including ongoing counseling and medication.

35. Based upon Plaintiff's telephone conversation with Cox, Defendant refused to allow Plaintiff to return to work.

36. On or about October 31, 2020, Defendant Engineer banned Plaintiff from entering on County property.

37. Plaintiff was placed on a paid leave, pending an investigation and a pre-disciplinary hearing.

38. On November 6, 2020, as a mandatory part of the pre-disciplinary process, HR Representative Kelly Christiansen interviewed Plaintiff and asked questions about his mental health disabilities, including questions about Plaintiff's conversations with his therapist.

39. During the investigatory interview, Plaintiff was given a Garrity Warning.

40. On November 9, 2020, Defendant Engineer filed a report with the Richland County Sheriff, provided the Sheriff with the recording of the phone call between Plaintiff and Cox, and alleged that Plaintiff may have engaged in criminal conduct.

41. On December 7, 2020, prior to his pre-disciplinary hearing, Plaintiff, by and through his attorney, contacted Defendant Engineer's attorney and requested accommodation, specifically:
    a. That the employer forego disciplinary action against Plaintiff arising out of his impaired, off-duty conversation with the Sedgwick Representative; and
    b. That Plaintiff be granted intermittent leave, as needed, to attend ongoing counseling and/or receive treatment for his disabilities.

42. Plaintiff also offered that he would submit to a second opinion psychiatric examination to allay any of the Engineer's concerns about his fitness for duty.

43. Defendant Engineer declined Plaintiff's request to forego discipline.

44. On December 15, 2020, Plaintiff, through his attorney, submitted a second request for accommodation, specifically, that his mental health disability be considered a mitigating factor when determining what, if any, level of discipline was imposed against him.

45. Upon information and belief, Defendant Engineer declined this request for accommodation.

46. Plaintiff's pre-disciplinary hearing was held on December 18, 2020.

47. During the pre-disciplinary hearing, Christiansen cited the statements Plaintiff made during the phone call as the reason for the proposed discipline.

48. Christiansen did not address the harassment that Plaintiff had been suffering at work.

49. Plaintiff's union representative reiterated that Plaintiff was off-duty and mentally impaired during the phone call.

50. Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

51. Plaintiff filed an EEOC charge against Defendant Engineer on February 7, 2021, alleging disability discrimination and retaliation.

52. Defendant Sedgwick was identified in the charge but was not specifically named as a Respondent.

53. A Notice of Rights letter was issued on March 18, 2021 and served upon Plaintiff's Attorney on April 30, 2021 (attached as Exhibit C).

54. The comments that led to Plaintiff's termination were made while Plaintiff was OFF DUTY and incapacitated.

55. The comments that led to Plaintiff's termination were made by Plaintiff while he was unable to perform the functions of his position.

56. But for the flare-up of his disability, he would not have made the violent and incoherent statements.

57. Defendants were aware of Plaintiff's disability and his need for medical leave prior to September 23, 2020.

58. Terminating Plaintiff under the circumstances described above is akin to disciplining an employee for making outlandish statements while under the influence of pain medication and/or anesthesia.

59. Plaintiff did not pose a safety risk to Defendant Engineer's employees, nor to himself, or to others.

60. By the time he was released to return to work, Plaintiff's symptoms were well under control.

61. Plaintiff was terminated because of his disability and his need for accommodation, including his need for leave.

## COUNT I
## FMLA INTERFERENCE
## AGAINST BOTH DEFENDANTS

62. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

63. On or about August 10, 2020, Plaintiff requested leave pursuant to the FMLA to undergo treatment for his mental health disability.

64. Defendant Engineer contracts with Defendant Sedgwick to administer its FMLA policies and procedures.

65. As Defendant Engineer's agent, Defendant Sedgwick interprets the FMLA, approves and/or disapproves leave requests, monitors leave status, obtains medical certifications, communicates with the Engineer's employees, communicates with health care providers, and advises the Engineer regarding compliance and strategies.

66. Plaintiff completed the required FMLA application(s), and his psychiatrist completed the medical certification(s) required by Defendant Sedgwick.

67. Plaintiff's psychiatrist confirmed that Plaintiff was suffering with a serious health condition as that term is defined by the FMLA and was continuously and completely incapacitated from performing the functions of his position from August 10, 2020, until October 30, 2020.

68. On or about September 23, 2020, Defendant Sedgwick's Representative Drew Cox telephoned Plaintiff and advised him that he was recording the conversation.

69. The purpose of Cox's call was to determine whether Plaintiff would be returning to work or needed to remain on leave.

70. During the phone call, Plaintiff responded to Cox's question by telling him about his extreme symptoms, his diagnoses and treatment, including the fact that he was currently undergoing counseling and taking new medications to help deal with his issues.

71. He informed Cox of advice given to Plaintiff by his therapist.

72. Plaintiff mentioned that he had violent feelings and thoughts of harming others, including unnamed co-workers.

73. Plaintiff talked about having suicidal thoughts.

74. He recounted harassment that he had been suffering at work at the hands of his co-workers.

75. During the call Plaintiff was rambling and was in the throes of a mental health crisis.

76. Upon information and belief, Defendant Sedgwick advised Defendant Engineer of the telephone call on September 23, 2020.

77. Thereafter, Sedgwick provided Defendant Engineer with the recording of the telephone call.

78. After the phone call, Plaintiff remained on leave for another month and continued receiving intensive treatment.

79. Defendant Engineer took no steps to prevent Plaintiff from entering upon county property until on or about October 30, 2020.

80. Defendant Engineer took no steps to warn employees about Plaintiff's threatening statements.

81. Plaintiff was released to return to work on November 1, 2020.

82. Defendant Engineer refused to allow Plaintiff to return to work pending an investigation and discipline related to Plaintiff's telephone conversation with Cox.

83. Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

84. Plaintiff exercised his right to take family medical leave because he was unable to perform the functions of his position (including adhering to workplace policies) from August 10, 2020, until October 31, 2020.

85. The purpose of Defendant Sedgwick's telephone call to Plaintiff was to discuss his ongoing need for leave.

86. The phone call was a protected medical inquiry as that term is defined by 42 USC §12112(d).

87. By providing Defendant Engineer with the recorded conversation, Defendant Sedgwick interfered with Plaintiff's right to reinstatement under the FMLA.

88. Defendant Engineer terminated Plaintiff because of statements he made during that phone call.

89. By refusing to reinstate Plaintiff upon his release to return to work and by terminating him, Defendant Engineer interfered with Plaintiff's FMLA rights.

90. Plaintiff has been damaged by Defendants' interference with his FMLA rights and is entitled to damages therefore, including liquidated damages.

## COUNT II
## DISABILITY DISCRIMINATION
## AGAINST DEFENDANT ENGINEER ONLY

91. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

92. Plaintiff is disabled as that term is defined by the ADA and Ohio law.

93. Defendant Engineer is an employer as that term is defined by the ADA and Defendant Sedgwick was/is its agent.

94. Upon information and belief, Defendant Engineer and Defendant Sedgwick are/were parties to a contract.

95. Defendant Engineer and Defendant Sedgwick were aware of Plaintiff's disability.

96. Plaintiff took a job protected medical leave of absence because of his disability.

97. During his leave, Plaintiff's disability rendered him temporarily unable to perform the functions of his position.

98. Defendant Engineer, by and through Defendant Sedgwick, granted Plaintiff's request for leave because Defendants knew that Plaintiff was incapacitated and temporarily incapable of performing the duties of his position.

99. On September 23, 2020, while on leave and in the throes of a mental health crisis, Plaintiff received a telephone call from Defendant Sedgwick to discuss whether he would be returning to work or would need additional family medical leave as an accommodation for his disability.

100. During the call, Plaintiff talked about his mental health diagnoses and his symptoms.

101. Plaintiff also informed Cox of advice given to him by his therapist.

102. He expressed a desire to return to work, but also discussed his need for ongoing leave.

103. Plaintiff also made irrational, suicidal, and violent statements.

104. Plaintiff did not express a specific intention to injure anyone and did not name any co-workers.

105. But for his disability, Plaintiff would not have made these statements.

106. Cox conveyed the entire content of the telephone call to Defendant Engineer on or about September 23, 2020 and provided Defendant Engineer with a recording of the call.

107. Between September 23, 2020 and October 29, 2020 Defendant took no action to prevent Plaintiff from entering onto County property.

108. Between September 23, 2020 and October 29, 2020 Defendant did not alert the authorities about Plaintiff's words.

109. Between September 23, 2020 and October 29, 2020 Plaintiff had contact with Defendant Engineer's employee(s), including face to face contact with a Superintendent who is also Plaintiff's neighbor.

110. Plaintiff was released to return to work on November 1, 2020.

111. Defendant Engineer refused to allow Plaintiff to return to work pending an internal investigation and discipline.

112. On November 6, 2020, as a mandatory part of the pre-disciplinary process, HR Representative Kelly Christiansen interviewed Plaintiff and asked questions about the phone call, including questions about his mental health disabilities, and questions about Plaintiff's conversations with his therapist.

113. Christiansen cited the phone call with Cox as the reason for the proposed discipline.

114. Christiansen questioned Plaintiff about his statements but did not address the harassment that Plaintiff had been suffering at work.

115. On November 9, 2020, Defendant Engineer filed a report with the Richland County Sheriff and provided the Sheriff with a copy of the entire recorded telephone call.

116. Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

117. The behavior cited by Defendant Engineer as the basis for Plaintiff's termination was caused by Plaintiff's disability.

118. The behavior cited by Defendant Engineer as the basis for Plaintiff's termination took place while Plaintiff was off-duty, relieved of his duties due to his disability, and mentally incapacitated.

119. Defendant Engineer violated the ADA by terminating Plaintiff because of his disability.

120. Plaintiff did not pose a danger to the safety and health of himself or his co-workers, in fact Plaintiff took a leave of absence specifically to address his mental health issues and avoid conflict at work.

121. The September 23, 2020, telephone call made by Defendant Sedgwick was a medical inquiry as that term is defined by 42 USC §12112(d).

122. When making the call, Defendant Sedgwick was acting within the course and scope of its agency to Defendant Engineer.

123. Defendant Sedgwick violated the ADA by revealing the entire content of the telephone call to personnel employed by Defendant Engineer.

124. The ADA permits information obtained about an employee's medical condition or history to be shared with supervisors and managers only for the purpose of determining necessary restrictions on the work or duties of the employee and providing necessary accommodations.

125. Defendant Sedgwick makes FMLA decisions on behalf of Defendant Engineer, therefore, there was no lawful reason for Sedgwick to inform Defendant Engineer about the contents of the telephone call.

126. Defendant Engineer violated the ADA by revealing the entire content of the telephone call and the results of Christiansen's internal investigation to Jon Burton, Mark Wright, J. Dickerson, the Richland County Sheriff's office, and others.

127. The ADA permits information obtained about an employee's medical condition or history to be shared with supervisors and managers only for the purpose of determining necessary restrictions on the work or duties of the employee and providing necessary accommodations.

128. Defendant Engineer revealed information about Plaintiff's medical condition or history for the purpose of conducting disciplinary proceedings, for the purpose of filing a police report, and to justify Plaintiff's termination.

129. Defendant Engineer violated the ADA by participating in a contractual relationship with Defendant Sedgwick that had the effect of subjecting Plaintiff to unlawful disability discrimination, including unlawful dissemination of his private medical information.

130. Plaintiff has been damaged by each Defendant's violations of the ADA.

131. Defendant Engineer is vicariously liable for the ADA violations committed by its agent, Defendant Sedgwick because Defendant Sedgwick was acting within the course and scope of its agency when it violated the ADA.

## COUNT III
## DISABILITY DISCRIMINATION (FAILURE TO ACCOMMODATE)
## AGAINST DEFENDANT ENGINEER ONLY

132. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

133. On December 7, 2020, prior to his pre-disciplinary hearing, Plaintiff, by and through his attorney, contacted Defendant Engineer's attorney and requested accommodation, specifically:

    a. That the employer forego disciplinary action against Plaintiff arising out of his impaired, off-duty conversation with the Sedgwick Representative; and

    b. That Plaintiff be granted intermittent leave, as needed, to attend ongoing counseling and/or receive treatment for his disabilities.

134. Plaintiff also offered that he would submit to a second opinion psychiatric examination to allay any of the Engineer's concerns about his fitness for duty.

135. Defendant Engineer declined Plaintiff's request to forego discipline.

136. Defendant Engineer declined to have Plaintiff undergo a second opinion medical examination.

137. On December 15, 2020, Plaintiff, through his attorney, submitted a second request for accommodation, specifically, that his mental health disability be considered a mitigating factor when determining what, if any, level of discipline was imposed against him.

138. Upon information and belief, Defendant Engineer declined this request for accommodation as well.

139. Defendant Engineer chose to terminate Plaintiff instead of accommodating him.

140. Defendant Engineer failed to engage in the interactive accommodation process required by the ADA.

141. Plaintiff has been damaged by Defendant Engineer's failure to accommodate his disabilities and by his termination.

## COUNT IV
## DISABILITY DISCRIMINATION
## IN VIOLATION OF OHIO REVISED CODE §4112.02
## AGAINST DEFENDANT ENGINEER ONLY

142. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

143. Plaintiff is disabled as that term is defined by the ADA and Ohio law.

144. Defendant Engineer is an employer as that term is defined by the ADA and Ohio law, Defendant Sedgwick is its agent.

145. Defendant Engineer and Defendant Sedgwick were aware of Plaintiff's disability.

146. Plaintiff took a medical leave of absence because of his disability.

147. During his leave, Plaintiff's disability rendered him temporarily unable to perform the functions of his position.

148. Defendant Engineer granted Plaintiff's request for leave because Defendants knew that Plaintiff was incapacitated and temporarily incapable of performing the duties of his position.

149. On September 23, 2020, while on leave and in the throes of a mental health crisis, Plaintiff received a telephone call from Defendant Sedgwick to discuss whether he would be returning to work or would need additional family medical leave as an accommodation for his disability.

150. During the call, Plaintiff talked about his mental health diagnoses and his symptoms.

151. Plaintiff also informed Cox of advice given to him by his therapist.

152. He expressed a desire to return to work, but also discussed his need for ongoing leave.

153. Plaintiff also made irrational, suicidal, and violent statements.

154. Plaintiff did not express a specific intention to injure anyone and did not name any co-workers.

155. But for his disability, Plaintiff would not have made these statements.

15

156. Cox conveyed the entire content of the telephone call to Defendant Engineer on or about September 23, 2020.

157. Between September 23, 2020 and October 29, 2020 Defendant took no action to prevent Plaintiff from entering onto County property.

158. Between September 23, 2020 and October 29, 2020 Defendant did not alert the authorities about Plaintiff's words.

159. Between September 23, 2020 and October 29, 2020 Plaintiff had contact with Defendant Engineer's employee(s), including face to face contact with a Superintendent who is also Plaintiff's neighbor.

160. Plaintiff was released to return to work on November 1, 2020.

161. Defendant Engineer refused to allow Plaintiff to return to work pending an investigation and discipline.

162. On November 6, 2020, as a mandatory part of the pre-disciplinary process, HR Representative Kelly Christiansen interviewed Plaintiff and asked questions about the phone call, including questions about his mental health disabilities, and questions about Plaintiff's conversations with his therapist.

163. Christiansen cited the phone call with Cox as the reason for the proposed discipline.

164. Christiansen questioned Plaintiff about his statements but did not address the harassment that Plaintiff had been suffering at work.

165. Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

166. The behavior cited by Defendant Engineer as the basis for Plaintiff's termination was caused by Plaintiff's disability.

167. The behavior cited by Defendant Engineer as the basis for Plaintiff's termination took place while Plaintiff was off-duty, relieved of his duties due to his disability, and mentally incapacitated.

168. Defendant Engineer violated Ohio law by terminating Plaintiff because of his disability.

169. Plaintiff did not pose a danger to the safety and health of himself or his co-workers, in fact Plaintiff took a leave of absence specifically to address his mental health issues and avoid conflict at work.

170. Plaintiff has been damaged by Defendant Engineer's violations of Ohio law.

171. Defendant Engineer is vicariously liable for the unlawful acts committed by its agent, Defendant Sedgwick.

**COUNT V**
**DISABILITY DISCRIMINATION (FAILURE TO ACCOMMODATE)**
**IN VIOLATION OF OHIO REVISED CODE §4112.02**
**AGAINST DEFENDANT ENGINEER**

172. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

173. On December 7, 2020, prior to his pre-disciplinary hearing, Plaintiff, by and through his attorney, contacted Defendant Engineer's attorney and requested accommodation, specifically:

    a. That the employer forego disciplinary action against Plaintiff arising out of his impaired, off-duty conversation with the Sedgwick Representative; and

    b. That Plaintiff be granted intermittent leave, as needed, to attend ongoing counseling and/or receive treatment for his disabilities.

174. Plaintiff also offered that he would submit to a second opinion psychiatric examination to allay any of the Engineer's concerns about his fitness for duty.

175. Defendant Engineer declined Plaintiff's request to forego discipline.

176. Defendant Engineer declined to have Plaintiff undergo a second opinion medical examination.

177. On December 15, 2020, Plaintiff, through his attorney, submitted a second request for accommodation, specifically, that his mental health disability be considered a mitigating factor when determining what, if any, level of discipline was imposed against him.

178. Upon information and belief, Defendant Engineer declined this request for accommodation as well.

179. Defendant Engineer chose to terminate Plaintiff instead of accommodating him.

180. Defendant Engineer failed to engage in the interactive accommodation process required by Ohio law.

181. Plaintiff has been damaged by Defendant Engineer's failure to accommodate his disabilities and by his termination.

### COUNT VI
### AIDING AND ABETTING DISABILITY DISCRIMINATION
### IN VIOLATION OF OHIO REVISED CODE §§4112.02(J) & 4112.99
### AGAINST DEFENDANT SEDGWICK

182. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

183. Ohio Revised Code §4112.02(J) states, in pertinent part, that it shall be an unlawful discriminatory practice for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice.

184. As a corporation, Defendant Sedgwick, is a legal person amenable to suit under this section.

185. Defendant Sedgwick recorded the September 23, 2020, telephone conversation with Plaintiff.

186. Defendant Sedgwick then provided the recording to Defendant Engineer.

187. By doing so, Defendant Sedgwick affirmatively took part in Defendant Engineer's unlawful disability discrimination against Plaintiff (described in the preceding paragraphs).

188. Sedgwick's actions aided, abetted, incited, compelled, and/or coerced Defendant Engineer to engage in adverse and unlawful disability discrimination against Plaintiff.

189. But for Defendant Sedgwick's actions, Plaintiff would have continued his leave of absence and his therapy, would have been released to return to work, and would have returned to work without incident.

190. Instead, Plaintiff was unlawfully terminated because of irrational words spoken while he was off-duty and suffering a mental health crisis.

191. Plaintiff has been damaged by Sedgwick's unlawful violation of Ohio Revised Code §4112.02(J) and he is therefore, entitled to compensation.

192. Defendant Sedgwick acted with willful disregard for Plaintiff's rights such that he is entitled to punitive damages and attorney's fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully prays that this Court grant him:

a. lost past and future wages and benefits in excess of $75,000;

b. compensatory damages;

c. liquidated damages;

d. an amount in excess of $75,000.00 in compensatory damages for garden variety emotional distress;

e. an amount in excess of $75,000.00 for punitive damages;

f. attorney fees and costs;

g. prejudgment and post judgment interest;

    h.  such other equitable and further relief as may be just and appropriate.

                                                  Respectfully Submitted,

                                                  */s/Sharon Cason-Adams*
                                                  Sharon Cason-Adams (0067550)
                                                  AGEE CLYMER MITCHELL & PORTMAN
                                                  140 East Town St., Suite 1100
                                                  Columbus, Ohio 43215
                                                  Telephone: 614-221-3318
                                                  Facsimile: 614-221-7308
                                                  scasonadams@ageeclymer.com

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable before a jury.

                                                  */s/Sharon Cason-Adams*
                                                  Sharon Cason-Adams