# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Danny Montgomery | : | |
| 4539 Henry Road | : | |
| Shelby, Ohio 44875 | : | Case No. 1:21-CV-00999 |
| | : | |
| v. | : | |
| | : | Judge: Dan Aaron Polster |
| Adam Gove, PE, PS | : | |
| Richland County Engineer | : | THIRD AMENDED |
| 77 North Mulberry Street | : | COMPLAINT WITH JURY DEMAND |
| Mansfield, Ohio 44903 | : | ENDORSED HEREIN |
| | : | |
| And | : | |
| | : | |
| Sedgwick Claims Management Servs, Inc. | : | |
| c/o Corporation Service Company | : | |
| 50 West Broad St., Suite 1330 | : | |
| Columbus, Ohio 43215 | : | |

1. This is an action for damages for violations of the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act 42 U.S.C.A. §12101 et. seq., Ohio law at ORC §4112 *et seq.,* and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§2611 et seq.

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §2617, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) which states, in pertinent part:  in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

1



**PARTIES:**

3. Plaintiff Danny Montgomery is a resident of Richland County, Ohio, and former employee of Defendant Richland County Engineer.

4. Plaintiff was employed by Defendant Engineer from September 29, 2005, until January 4, 2021, most recently as a Highway Maintenance Worker II.

5. Defendant Richland County Engineer (hereinafter "Engineer") is a body politic and corporate and an employer as that term is defined by the ADA, Ohio law, and the FMLA.

6. Defendant Sedgwick Claims Management Services, Inc. (hereinafter, "Sedgwick") is a Tennessee corporation.

7. Defendant Sedgwick is an agent of Defendant Richland County Engineer.

8. Defendant Engineer delegated to Defendant Sedgwick the power to grant or deny job protected family medical leave to Plaintiff and other employees of Defendant Richland County Engineer.

**BACKGROUND FACTS:**

9. Plaintiff is disabled as that term is defined by the Americans with Disabilities Act (ADA) as he suffers with mental health disabilities.

10. At all times relevant herein, Defendants were aware of Plaintiff's disability.

11. Because of Plaintiff's mental health disabilities, he has been receiving counseling and treatment since 2019.

12. Plaintiff voluntarily sought help for his disabilities following an incident at work and informed Defendant Engineer that he was undergoing counseling.

13. Beginning on August 10, 2020, Plaintiff suffered a "flare-up" of his symptoms.

14. From August 10, 2020, until October 29, 2020, Plaintiff was on an approved family medical leave because he was suffering with symptoms of his disability and was receiving treatment and counseling.

15. Part of the treatment he was receiving was a new medication regime.

16. Because he was suffering extreme symptoms of his disabilities and taking new medication, Plaintiff was unable to perform the functions of his job and was completely incapacitated during his leave.

17. Plaintiff's symptoms included the inability to think rationally and to process information fully and accurately.

18. He was suffering with a lack of sleep, mood swings, stress, and anxiety, depression, and PTSD.

19. On September 23, 2020, Plaintiff received a telephone call from Sedgwick Representative Andrew Cox who was calling regarding Plaintiff's ongoing need for leave of absence.

20. Specifically, Cox wanted to know if Plaintiff would be returning to work at the end of September or would need to extend his leave.

21. Plaintiff does not clearly remember the phone call, but it was recorded by Cox, who advised Plaintiff he was recording.

22. The telephone call lasted over forty minutes.

23. During the phone call, Plaintiff told Cox about his extreme symptoms, his diagnoses and treatment, including the fact that he was currently undergoing counseling and taking medications to help deal with his issues.

24. Plaintiff mentioned that he had violent thoughts of harming others, including unnamed co-workers.

3

25. Plaintiff recounted his belief that one of his co-workers had been driving by his house as if to stalk him.

26. Plaintiff talked about having suicidal thoughts.

27. He recounted the harassment he had been suffering at the hands of some of his coworkers.

28. Plaintiff repeatedly stated that he loved his job, that he was a good worker, and wanted to return to work.

29. Plaintiff was rambling and was in the throes of a mental health crisis when he had this conversation.

30. Defendant Sedgwick advised Defendant Engineer about the telephone call on September 23, 2020 and provided Defendant Engineer with a copy of the recording.

31. After the phone call, Plaintiff remained on leave for another month and continued receiving treatment.

32. Plaintiff was released to return to work full duty on October 29, 2020, with a return-to-work date of November 1, 2020.

33. Plaintiff fully expected to return to work and perform his duties without restriction.

34. Plaintiff also expected to continue receiving treatment upon his return to work, including ongoing counseling and medication.

35. Based upon Plaintiff's telephone conversation with Cox, Defendant Engineer refused to allow Plaintiff to return to work.

36. On or about October 31, 2020, Defendant Engineer banned Plaintiff from entering on County property.

37. Plaintiff was placed on a paid leave, pending an investigation and a pre-disciplinary hearing.

38. On November 6, 2020, as a mandatory part of the pre-disciplinary process, HR Representative Kelly Christiansen interviewed Plaintiff and asked questions about his mental health disabilities, including questions about Plaintiff's conversations with his therapist.

39. During the investigatory interview, Plaintiff was given a Garrity Warning.

40. On November 9, 2020, Defendant Engineer filed a report with the Richland County Sheriff, provided the Sheriff with the recording of the phone call between Plaintiff and Cox, and alleged that Plaintiff may have engaged in criminal conduct.

41. On December 7, 2020, prior to his pre-disciplinary hearing, Plaintiff, by and through his attorney, contacted Defendant Engineer's attorney and requested accommodation, specifically:

   a. That the employer forego disciplinary action against Plaintiff arising out of his impaired, off-duty conversation with the Sedgwick Representative; and

   b. That Plaintiff be granted intermittent leave, as needed, to attend ongoing counseling and/or receive treatment for his disabilities.

42. Plaintiff also offered that he would submit to a second opinion psychiatric examination to allay any of the Engineer's concerns about his fitness for duty.

43. Defendant Engineer declined Plaintiff's request to forego discipline.

44. On December 15, 2020, Plaintiff, through his attorney, submitted a second request for accommodation, specifically, that his mental health disability be considered a mitigating factor when determining what, if any, level of discipline was imposed against him.

45. Upon information and belief, Defendant Engineer declined this request for accommodation.

46. Plaintiff's pre-disciplinary hearing was held on December 18, 2020.

47. During the pre-disciplinary hearing, Christiansen cited the statements Plaintiff made during the phone call as the reason for the proposed discipline.

5

48. Christiansen did not address the harassment that Plaintiff had been suffering at work.

49. Plaintiff's union representative reiterated that Plaintiff was off-duty and mentally impaired during the phone call.

50. Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

51. Plaintiff filed an EEOC charge (dual filed with the OCRC) against Defendant Engineer on February 7, 2021, alleging disability discrimination and retaliation.

52. A Notice of Rights letter was issued on March 18, 2021 and served upon Plaintiff's Attorney on April 30, 2021 (attached as Exhibit A).

53. On July 8, Plaintiff filed an EEOC charge (dual filed with the OCRC) against Defendant Sedgwick.

54. A Right to Sue Notice was issued on July 25, 2021 (Exhibit B).

55. The comments that led to Plaintiff's termination were made while Plaintiff was OFF DUTY and incapacitated.

56. The comments that led to Plaintiff's termination were made by Plaintiff while he was unable to perform the functions of his position.

57. But for his disability, Plaintiff would not have made the violent and incoherent statements.

58. Defendants were aware of Plaintiff's disability and his need for medical leave prior to September 23, 2020.

59. Terminating Plaintiff under the circumstances described above is akin to disciplining an employee for making outlandish statements while under the influence of pain medication and/or anesthesia.

60. Plaintiff did not pose a safety risk to Defendant Engineer's employees, nor to himself, or others.

61. By the time he was released to return to work, Plaintiff's symptoms were well under control.

62. Plaintiff was terminated because of his disability and his need for accommodation, including his need for leave.

**COUNT I**
**FMLA INTERFERENCE**
**AGAINST DEFENDANT ENGINEER ONLY**

63. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

64. On or about August 10, 2020, Plaintiff requested leave pursuant to the FMLA to undergo treatment for his mental health disability.

65. Defendant Engineer contracts with Defendant Sedgwick to administer its FMLA policies and procedures.

66. As Defendant Engineer's agent, Defendant Sedgwick interprets the FMLA, approves and/or disapproves leave requests, monitors leave status, obtains medical certifications, communicates with the Engineer's employees, communicates with health care providers, and advises the Engineer regarding compliance and strategies.

67. Plaintiff completed the required FMLA application(s), and his psychiatrist completed the medical certification(s) required by Defendant Sedgwick.

68. Plaintiff's psychiatrist confirmed that Plaintiff was suffering with a serious health condition as that term is defined by the FMLA and was continuously and completely incapacitated from performing the functions of his position from August 10, 2020, until October 30, 2020.

69. On or about September 23, 2020, Defendant Sedgwick's Representative Drew Cox telephoned Plaintiff and advised him that he was recording the conversation.

70. The purpose of Cox's call was to determine whether Plaintiff would be returning to work or needed to remain on leave.

71. During the phone call, Plaintiff responded to Cox's question by telling him about his extreme symptoms, his diagnoses and treatment, including the fact that he was currently undergoing counseling and taking new medications to help deal with his issues.

72. He informed Cox of advice given to Plaintiff by his therapist.

73. Plaintiff mentioned that he had violent feelings and thoughts of harming others, including unnamed co-workers.

74. Plaintiff talked about having suicidal thoughts.

75. He recounted harassment that he had been suffering at work at the hands of his co-workers.

76. During the call Plaintiff was rambling and was in the throes of a mental health crisis.

77. Upon information and belief, Defendant Sedgwick advised Defendant Engineer of the telephone call on September 23, 2020.

78. Thereafter, Sedgwick provided Defendant Engineer with the recording of the telephone call.

79. After the phone call, Plaintiff remained on leave for another month and continued receiving intensive treatment.

80. Plaintiff was released to return to work on November 1, 2020.

81. Defendant Engineer refused to allow Plaintiff to return to work pending an investigation and discipline related to Plaintiff's telephone conversation with Cox.

82. Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

83. Plaintiff exercised his right to take family medical leave because he was unable to perform the functions of his position (including adhering to workplace policies) from August 10, 2020, until October 31, 2020.

84. The purpose of Defendant Sedgwick's telephone call to Plaintiff was to discuss his ongoing need for leave.

85. The phone call was a protected medical inquiry as that term is defined by 42 USC §12112(d).

86. Defendant Engineer terminated Plaintiff because of statements he made during that phone call.

87. By refusing to reinstate Plaintiff upon his release to return to work and by terminating him, Defendant Engineer interfered with Plaintiff's FMLA rights.

88. Plaintiff has been damaged by Defendant Engineer's interference with his FMLA rights and is entitled to damages therefore, including liquidated damages.

**COUNT II**
**DISABILITY DISCRIMINATION**
**AGAINST DEFENDANT ENGINEER ONLY**

89. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

90. Plaintiff is disabled as that term is defined by the ADA and Ohio law.

91. Defendant Engineer is an employer as that term is defined by the ADA and Defendant Sedgwick was/is its agent.

92. Upon information and belief, Defendant Engineer and Defendant Sedgwick are/were parties to a contract.

93. Defendant Engineer and Defendant Sedgwick were aware of Plaintiff's disability.

94. Plaintiff took a job protected medical leave of absence because of his disability.

95. During his leave, Plaintiff's disability rendered him temporarily unable to perform the functions of his position.

96. Defendant Engineer, by and through Defendant Sedgwick, granted Plaintiff's request for leave because Defendants knew that Plaintiff was incapacitated and temporarily incapable of performing the duties of his position.

97. On September 23, 2020, while on leave and in the throes of a mental health crisis, Plaintiff received a telephone call from Defendant Sedgwick to discuss whether he would be returning to work or would need additional family medical leave as an accommodation for his disability.

98. During the call, Plaintiff talked about his mental health diagnoses and his symptoms.

99. Plaintiff also informed Cox of advice given to him by his therapist.

100. He expressed a desire to return to work, but also discussed his need for ongoing leave.

101. Plaintiff also made irrational, suicidal, and violent statements.

102. Plaintiff did not express a specific intention to injure anyone and did not name any co-workers.

103. But for his disability, Plaintiff would not have made these statements.

104. Cox conveyed the entire content of the telephone call to Defendant Engineer on or about September 23, 2020 and provided Defendant Engineer with a recording of the call.

105. Between September 23, 2020 and October 29, 2020 Defendant did not alert the authorities about Plaintiff's words.

106. Between September 23, 2020 and October 29, 2020 Plaintiff had contact with Defendant Engineer's employee(s), including face to face contact with a Superintendent who is also Plaintiff's neighbor.

107. Plaintiff was released to return to work on November 1, 2020.

108. Defendant Engineer refused to allow Plaintiff to return to work pending an internal investigation and discipline.

109.    On November 6, 2020, as a mandatory part of the pre-disciplinary process, HR Representative Kelly Christiansen interviewed Plaintiff and asked questions about the phone call, including questions about his mental health disabilities, and questions about Plaintiff's conversations with his therapist.

110.    Christiansen cited the phone call with Cox as the reason for the proposed discipline.

111.    Christiansen questioned Plaintiff about his statements but did not address the harassment that Plaintiff had been suffering at work.

112.    On November 9, 2020, Defendant Engineer filed a report with the Richland County Sheriff and provided the Sheriff with a copy of the entire recorded telephone call.

113.    Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

114.    The behavior cited by Defendant Engineer as the basis for Plaintiff's termination was caused by Plaintiff's disability.

115.    The behavior cited by Defendant Engineer as the basis for Plaintiff's termination took place while Plaintiff was off-duty, relieved of his duties due to his disability, and mentally incapacitated.

116.    Defendant Engineer violated the ADA by terminating Plaintiff because of his disability.

117.    Plaintiff did not pose a danger to the safety and health of himself or his co-workers, in fact Plaintiff took a leave of absence specifically to address his mental health issues and avoid conflict at work.

118.    The September 23, 2020, telephone call made by Defendant Sedgwick was a medical inquiry as that term is defined by 42 USC §12112(d).

11

119.    When making the call, Defendant Sedgwick was acting within the course and scope of its agency to Defendant Engineer.

120.    Defendant Sedgwick violated the ADA by revealing the entire content of the telephone call to personnel employed by Defendant Engineer.

121.    The ADA permits information obtained about an employee's medical condition or history to be shared with supervisors and managers only for the purpose of determining necessary restrictions on the work or duties of the employee and providing necessary accommodations.

122.    There was no lawful reason for Defendant Sedgwick to inform Defendant Engineer about the entire content of the telephone call.

123.    Defendant Engineer violated the ADA by revealing the entire content of the telephone call and the results of Christiansen's internal investigation to Jon Burton, Mark Wright, J. Dickerson, the Richland County Sheriff's office, and others.

124.    The ADA permits information obtained about an employee's medical condition or history to be shared with supervisors and managers only for the purpose of determining necessary restrictions on the work or duties of the employee and providing necessary accommodations.

125.    Defendant Engineer revealed information about Plaintiff's medical condition or history for the purpose of conducting disciplinary proceedings, for the purpose of filing a police report, and to justify Plaintiff's termination.

126.    Defendant Engineer violated the ADA by participating in a contractual relationship with Defendant Sedgwick that had the effect of subjecting Plaintiff to unlawful disability discrimination, including unlawful dissemination of his private medical information.

127.    Plaintiff has been damaged by each Defendant's violations of the ADA.

12

128.    Defendant Engineer is vicariously liable for the ADA violations committed by its agent, Defendant Sedgwick because Defendant Sedgwick was acting within the course and scope of its agency when it violated the ADA.

## COUNT III
## DISABILITY DISCRIMINATION (FAILURE TO ACCOMMODATE)
## AGAINST DEFENDANT ENGINEER ONLY

129.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

130.    On December 7, 2020, prior to his pre-disciplinary hearing, Plaintiff, by and through his attorney, contacted Defendant Engineer's attorney and requested accommodation, specifically:

a.    That the employer forego disciplinary action against Plaintiff arising out of his impaired, off-duty conversation with the Sedgwick Representative; and

b.    That Plaintiff be granted intermittent leave, as needed, to attend ongoing counseling and/or receive treatment for his disabilities.

131.    Plaintiff also offered that he would submit to a second opinion psychiatric examination to allay any of the Engineer's concerns about his fitness for duty.

132.    Defendant Engineer declined Plaintiff's request to forego discipline.

133.    Defendant Engineer declined to have Plaintiff undergo a second opinion medical examination.

134.    On December 15, 2020, Plaintiff, through his attorney, submitted a second request for accommodation, specifically, that his mental health disability be considered a mitigating factor when determining what, if any, level of discipline was imposed against him.

135.    Upon information and belief, Defendant Engineer declined this request for accommodation as well.

136.    Defendant Engineer chose to terminate Plaintiff instead of accommodating him.

13

137.    Defendant Engineer failed to engage in the interactive accommodation process required by the ADA.

138.    Plaintiff has been damaged by Defendant Engineer's failure to accommodate his disabilities and by his termination.

### COUNT IV
### DISABILITY DISCRIMINATION
### IN VIOLATION OF OHIO REVISED CODE §4112.02
### AGAINST DEFENDANT ENGINEER ONLY

139.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

140.    Plaintiff is disabled as that term is defined by the ADA and Ohio law.

141.    Defendant Engineer is an employer as that term is defined by the ADA and Ohio law, Defendant Sedgwick is its agent.

142.    Defendant Engineer and Defendant Sedgwick were aware of Plaintiff's disability.

143.    Plaintiff took a medical leave of absence because of his disability.

144.    During his leave, Plaintiff's disability rendered him temporarily unable to perform the functions of his position.

145.    Defendant Engineer granted Plaintiff's request for leave because Defendants knew that Plaintiff was incapacitated and temporarily incapable of performing the duties of his position.

146.    On September 23, 2020, while on leave and in the throes of a mental health crisis, Plaintiff received a telephone call from Defendant Sedgwick to discuss whether he would be returning to work or would need additional family medical leave as an accommodation for his disability.

147.    During the call, Plaintiff talked about his mental health diagnoses and his symptoms.

148.    Plaintiff also informed Cox of advice given to him by his therapist.

149.    He expressed a desire to return to work, but also discussed his need for ongoing leave.

150.    Plaintiff also made irrational, suicidal, and violent statements.

151.   Plaintiff did not express a specific intention to injure anyone and did not name any co-workers.

152.   But for his disability, Plaintiff would not have made these statements.

153.   Cox conveyed the entire content of the telephone call to Defendant Engineer on or about September 23, 2020.

154.   Between September 23, 2020 and October 29, 2020 Defendant did not alert the authorities about Plaintiff's words.

155.   Between September 23, 2020 and October 29, 2020 Plaintiff had contact with Defendant Engineer's employee(s), including face to face contact with a Superintendent who is also Plaintiff's neighbor.

156.   Plaintiff was released to return to work on November 1, 2020.

157.   Defendant Engineer refused to allow Plaintiff to return to work pending an investigation and discipline.

158.   On November 6, 2020, as a mandatory part of the pre-disciplinary process, HR Representative Kelly Christiansen interviewed Plaintiff and asked questions about the phone call, including questions about his mental health disabilities, and questions about Plaintiff's conversations with his therapist.

159.   Christiansen cited the phone call with Cox as the reason for the proposed discipline.

160.   Christiansen questioned Plaintiff about his statements but did not address the harassment that Plaintiff had been suffering at work.

161.   Plaintiff was terminated on January 4, 2021, for "engaging in gross misconduct; failure of good behavior; malfeasance, misfeasance, and violating Article 12 (Health and Safety) of the Collective Bargaining Agreement."

15

162. The behavior cited by Defendant Engineer as the basis for Plaintiff's termination was caused by Plaintiff's disability.

163. The behavior cited by Defendant Engineer as the basis for Plaintiff's termination took place while Plaintiff was off-duty, relieved of his duties due to his disability, and mentally incapacitated.

164. Defendant Engineer violated Ohio law by terminating Plaintiff because of his disability.

165. Plaintiff did not pose a danger to the safety and health of himself or his co-workers, in fact Plaintiff took a leave of absence specifically to address his mental health issues and avoid conflict at work.

166. Plaintiff has been damaged by Defendant Engineer's violations of Ohio law.

167. Defendant Engineer is vicariously liable for the unlawful acts committed by its agent, Defendant Sedgwick.

## COUNT V
## DISABILITY DISCRIMINATION (FAILURE TO ACCOMMODATE)
## IN VIOLATION OF OHIO REVISED CODE §4112.02
## AGAINST DEFENDANT ENGINEER ONLY

168. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

169. On December 7, 2020, prior to his pre-disciplinary hearing, Plaintiff, by and through his attorney, contacted Defendant Engineer's attorney and requested accommodation, specifically:

   a. That the employer forego disciplinary action against Plaintiff arising out of his impaired, off-duty conversation with the Sedgwick Representative; and

   b. That Plaintiff be granted intermittent leave, as needed, to attend ongoing counseling and/or receive treatment for his disabilities.

170. Plaintiff also offered that he would submit to a second opinion psychiatric examination to allay any of the Engineer's concerns about his fitness for duty.

171.    Defendant Engineer declined Plaintiff's request to forego discipline.

172.    Defendant Engineer declined to have Plaintiff undergo a second opinion medical examination.

173.    On December 15, 2020, Plaintiff, through his attorney, submitted a second request for accommodation, specifically, that his mental health disability be considered a mitigating factor when determining what, if any, level of discipline was imposed against him.

174.    Upon information and belief, Defendant Engineer declined this request for accommodation as well.

175.    Defendant Engineer chose to terminate Plaintiff instead of accommodating him.

176.    Defendant Engineer failed to engage in the interactive accommodation process required by Ohio law.

177.    Plaintiff has been damaged by Defendant Engineer's failure to accommodate his disabilities and by his termination.

## COUNT VI
## AIDING AND ABETTING DISABILITY DISCRIMINATION
## IN VIOLATION OF OHIO REVISED CODE §§4112.02(J) & 4112.99
## AGAINST DEFENDANT SEDGWICK

178.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

179.    Ohio Revised Code §4112.02(J) states, in pertinent part, that it shall be an unlawful discriminatory practice for "any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."

180.    As a corporation, Defendant Sedgwick, is a legal person amenable to suit under this section.

181.    Defendant Sedgwick was acting as Defendant Engineer's agent when it telephoned Plaintiff at his home, while he was mentally incapacitated and unable to perform the functions of his position.

182.    Defendant Sedgwick telephoned Plaintiff on September 23, 2020, to learn whether he would be returning to work on September 30, 2020, or whether he would need an extension of his leave of absence.

183.    As of the date of the phone call, Sedgwick had already approved Plaintiff for continuous FMLA beginning August 10, 2020, through September 29, 2020, with intermittent leave beginning September 30, 2020, through February 10, 2021.

184.    Plaintiff's intermittent leave was approved for 4 episodes every month with each episode lasting up to 4 days. Thus, beginning September 30, 2020, Plaintiff was approved to take up to 16 days of leave in October and November and December 2020.

185.    Given this approval, Plaintiff was not necessarily required to return to work on September 30, 2020.

186.    Furthermore, Plaintiff had paid sick leave available which would have allowed him to remain off work for an additional 4 months.

187.    There was no legitimate reason for Defendant Sedgwick to telephone Plaintiff on September 23, 2020.

188.    Defendant Sedgwick recorded the telephone conversation which lasted 40:10 minutes.

189.    Within the first 2 minutes of the phone call Plaintiff informed Defendant Sedgwick that although he wanted to return to work, his therapist told him he would be crazy to return.

190.    At 2:18 into the telephone call, Plaintiff told Defendant Sedgwick's representative that he was suffering with "severe problems, dangerous problems" including depression, PTSD, and anxiety.

191.    At 2:57 minutes into the phone call, Plaintiff told Defendant Sedgwick he was under the influence of newly prescribed medication. He said, "I have changed meds so much I can't keep up with it."

192.    At 10:25 minutes into the phone call, Plaintiff told Defendant Sedgwick that his doctor put him off work until the end of October and that his wife had just faxed the (FMLA) packet.

193.    Despite receiving a definitive answer to its question about Plaintiff's ongoing need for leave, Defendant Sedgwick unnecessarily and purposefully continued the telephone call for another 29 minutes, recording the entire time.

194.    At 12 minutes into the telephone call Plaintiff told Defendant "My mind aint working right."

195.    At 12:52 into the telephone call, Plaintiff again stated that the (FMLA) packets (extending his leave) were faxed two days ago.

196.    Although Plaintiff had once again answered the question about his ongoing need for leave, Defendant Sedgwick unnecessarily and purposefully continued the call for another 27 minutes.

197.    All the statements that were eventually used by Defendant Engineer to unlawfully terminate Plaintiff' were made by Plaintiff in the 27 minutes of the phone call.

198.    Plaintiff told Defendant that he had previously been hospitalized for mental illness.

199.    At 14:15 Plaintiff recounted being harassed at work and how he had been disciplined for trumped up allegations of events that happened 16 years ago.

200.    He told Defendant that he has violent thoughts, but that, "I never hit nobody."

201.    He explained that his co-workers tried to incite him to violence.

202.    At 18:20 Plaintiff explained that his psychiatrist told him to stay away from people who would try to incite him, and he told Defendant Sedgwick that he was following that advice.

203.   Defendant Sedgwick knew the reason for Plaintiff's leave of absence.

204.   Defendant knew or should have known that Plaintiff was not mentally competent to relay reliable information or understand the implication of his words.

205.   At 19:30 Plaintiff stated, "I don't know if I'm answering your questions or not."

206.   At 22:30 Plaintiff again told Defendant, "He (the psychiatrist) put him off until the end of October."

207.   Despite receiving a definitive answer to its question about Plaintiff's ongoing need for leave, Defendant Sedgwick unnecessarily and purposefully continued the telephone call for another 17:5 minutes, recording the entire time.

208.   At 24:34 Plaintiff again told Defendant Sedgwick's Representative that the FMLA packets had been sent.

209.   Defendant Sedgwick continued the call for another 15:26 minutes.

210.   At 26:33 Plaintiff told Defendant Sedgwick that one of his co-workers was spying on him by slowly driving by his house.  He said this made him "feel like" he should just run him down and leave him in a ditch because he wouldn't leave Plaintiff alone.

211.   Plaintiff apologized numerous times throughout the call and said he hoped he hadn't been rude and that he had answered Defendant's questions.

212.   Defendant Sedgwick provided the entire recording to Defendant Engineer on the pretense that Plaintiff might be a danger to himself or to others.

213.   Upon information and belief, Defendant Sedgwick was under no legal duty to provide the recorded phone call to Defendant Engineer.

214.   In fact, by providing the entire recorded conversation, Defendant Sedgwick violated the ADA's prohibition against revealing the contents of a medical inquiry. 42 USC §12112(d).

215.    Defendant Sedgwick could have told Defendant Richland County Engineer about Plaintiff's vague threats of suicide and violence without providing the recording to Defendant Engineer.

216.    Plaintiff never specifically identified any of his co-workers and never expressed a plan to hurt anyone. Indeed, Plaintiff specifically stated he did not want to hurt anyone.

217.    Upon information and belief, Defendant Sedgwick provided the entire recording because it was inflammatory, it cast Plaintiff in a bad light, and was likely to incite Defendant Richland County to take discriminatory and adverse action against Plaintiff.

218.    Upon information and belief, Defendant Sedgwick specifically intended to compel or coerce Defendant Engineer into taking discriminatory and adverse action against Plaintiff because of his mental health disability.

219.    By doing so, Defendant Sedgwick affirmatively took part in Defendant Engineer's unlawful disability discrimination against Plaintiff (described in the preceding paragraphs).

220.    Sedgwick's actions did in fact aid, abet, incite, compel, and/or coerce Defendant Engineer to engage in adverse and unlawful disability discrimination against Plaintiff.

221.    But for Defendant Sedgwick's actions, Plaintiff would have continued his leave of absence and his therapy, would have been released to return to work, and would have returned to work without incident after his mental health crisis had passed.

222.    Instead, Plaintiff was unlawfully terminated because of irrational words spoken while he was off-duty and suffering a mental health crisis.

223.    Plaintiff has been damaged by Sedgwick's unlawful violation of Ohio Revised Code §4112.02(J) and he is therefore, entitled to compensation.

224.    Defendant Sedgwick acted with willful disregard for Plaintiff's rights such that he is entitled to punitive damages and attorney's fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court grant him:

a.   lost past and future wages and benefits in excess of $75,000;

b.   compensatory damages;

c.   liquidated damages;

d.   an amount in excess of $75,000.00 in compensatory damages for garden variety emotional distress;

e.   an amount in excess of $75,000.00 for punitive damages;

f.   attorney fees and costs;

g.   prejudgment and post judgment interest;

h.   such other equitable and further relief as may be just and appropriate.

Respectfully Submitted,

/s/Sharon Cason-Adams
Sharon Cason-Adams (0067550)
AGEE CLYMER MITCHELL & PORTMAN
140 East Town St., Suite 1100
Columbus, Ohio 43215
Telephone: 614-221-3318
Facsimile: 614-221-7308
scasonadams@ageeclymer.com

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable before a jury.

/s/Sharon Cason-Adams
Sharon Cason-Adams

22

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:   **Danny Montgomery**<br>        **4539 Henry Road**<br>        **Shelby, OH 44875** | From:   **Cleveland Field Office**<br>          **EEOC, AJC Fed Bldg**<br>          **1240 E 9th St, Ste 3001**<br>          **Cleveland, OH 44199** |

[ ]  *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Joann J. Wells,** | |
| **532-2021-01001** | **Investigator Support Asst** | **(216) 306-1123** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[ ]  More than 180 days have passed since the filing of this charge.

[X]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Dana R. Hutter*                                                    03/18/2021

Enclosures(s)

**Dana R. Hutter,**                                    *(Date Issued)*
**Deputy Director**

Adam Gove                                Sharon Carson-Adams
County Engineer                          AGEE CLYMER
77 North Mulberry Street                 140 East Town Street, Ste. 1100
Mansfield, OH  44903                     Columbus, OH  43215

**EXHIBIT**

**A**

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

_____

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Danny Montgomery**<br>**4539 Henry Road**<br>**Shelby, OH 44875** | From:  **Cleveland Field Office**<br>**EEOC, AJC Fed Bldg**<br>**1240 E 9th St, Ste 3001**<br>**Cleveland, OH 44199** |

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **532-2021-02158** | **Marvin Patten, Jr.,**<br>**Investigator Support Asst** | **(216) 306-1144** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Dana R. Hutter*                                    July 25, 2021
_____            _____
**Dana R. Hutter,**                                    *(Date Issued)*
**Deputy Director**

Enclosures(s)

cc:

| | |
|---|---|
| **John M. Russel, Esq.**<br>**Counsel**<br>**ROS LAW**<br>**5178 Wheelis Drive**<br>**Memphis, TN 38117** | **Sharon Cason-Adams, Esq.**<br>**AGEE CLYMER ATTORNEYS AT LAW**<br>**140 East Town Street, Suite 1100**<br>**Columbus, OH 43215** |

**EXHIBIT**

**B**